GERMAN-AMERICAN PROVISION COMPANY *v.* JAMES A. JONES
ET AL.

[39 South. Rep., 521.

1. SALES. *Breach of warranty. Principal and agent.*

An agent of a seller of lard, warranted to be pure leaf lard, when sent to the buyer to arrange and compromise a dispute as to the quality of the lard, has power to authorize the buyer to sell it as compound lard.

2. SAME. *Rescission by seller. Return of consideration.*

A seller of lard on a dispute with the buyer as to its quality has no right to require the return of the lard without himself returning the part of the purchase money which he has been paid therefor.

3. SALES. *Action for price. Evidence.*

In an action for the price of lard, where the defendants say that the lard received was compound lard, and not pure leaf lard, as warranted by the seller, the books of the buyer are not admissible in evidence to show his loss or gain on the commodity.

FROM the circuit court of, first district, Hinds county.

HON. DAVID M. MILLER, Judge.

The German-American Provision Company, the appellant, was the plaintiff in the court below; Jones and others, appellees, doing business under the firm name of Jones Brothers & Company, were defendants there. From a judgment in favor of defendants, plaintiff appealed to the supreme court. The facts are stated in the opinion of the court.

*Alexander & Alexander,* and *George B. Power,* for appellant.

The theory of defendants is that, inasmuch as the lard shipped was only compound lard, instead of pure leaf lard, defendants, upon paying the price of compound lard, have a legal right to hold the same and convert it to their use, in spite of the constantly expressed request of the plaintiff for return of the lard. The defendants have proceeded all along under the idea that the lard was compound—that is, not pure leaf lard damaged—but of a different kind from that ordered. The claim of the plaintiff was that the lard was of the kind ordered, and if defendants did not find it merchantable, it was because it was pure leaf lard which had suffered damage. Inasmuch as the plaintiff was entitled to have the jury pass upon its side of the case, it had the right to have the books of Jones Brothers & Company shown in evidence, in order that its theory that the lard was really pure leaf lard (proof of which had been made) passed upon by the jury, and therefore they should have been informed of what Jones Brothers & Company had realized on it. If the lard was of a different grade from the kind ordered, then, as claimed by defendants, they had a legal right to pay the market value of such inferior grade and keep the same. We admit this. But if, on the other hand, the lard was damaged lard of the kind ordered, plaintiff had a legal right to show what Jones Brothers & Company realized on it.

*Williamson, Wells & Peyton,* for appellees.

Under well-recognized rules and numberless decisions of the question, our court will not disturb the finding of the jury on disputed questions of fact, especially in a case where the finding is so well supported by the evidence as is true in this case. If it be true, as was found by the jury, that the appellant did in fact bind and obligate itself to sell and deliver to the appellees a large quantity of pure leaf lard at a stipulated price, and did in fact fail to keep its agreement, but, on the contrary, did in fact, as the jury found, ship and deliver to the appellees a large quantity of inferior or compound lard, what would be the legal aspects of the case?

There are several well-known remedies for breach of warranty such as occurred in this case. Rescission is one of them, but it is only one of them. Appellant's counsel in this case conducted the case throughout upon the idea that this was the only remedy, and it is the only one alluded to in their brief; but the law as to such breaches of warranty, as laid down in 30 Am. & Eng. Ency. Law (2d ed.), 190, is as follows: "When the warranty is one relating to the quality of the goods sold, the buyer has his choice of three remedies: If the title has not passed to him and the contract is still executory, or if the warranty was fraudulently made, he may rescind the contract and refuse to accept the goods; or, if he has already received them, he may return them or notify the seller that they are held subject to his order; if the title has passed to the buyer, he may bring his action to recover damages for the breach, or he may set up such damages by way of set-off or recoupment when sued for the purchase money." The text is supported by citations to a large number of reputable authorities.

The doctrine on the subject of rescission has nothing to do with this case, for the reason that the appellees never undertook to rescind. They could not do so, for the reason that the first duty of the buyer on rescinding is to return the article, which would have been in this case impossible. Another rule where rescission

is attempted, and which is well recognized, is that the whole of the article must be returned.    The buyer cannot select such part from the bulk as he may desire and return the remainder; the rescission must be of the entire contract or not at all.    *Lyon* v. *Bertram,* 20 How. (U. S.), 149; *Morse* v. *Brackett,* 98 Mass., 205; *Carpenter* v. *Minturn,* 65 (Barb.) N. Y., 415; *Cream City Glass Co.* v. *Friedlander,* 84 Wis., 53.

Under the facts as detailed in the evidence in this case, it would have been impossible for the appellees to have had a rescission, because they could not have complied with the law which required them to put the parties in *statu quo.*

It is said that the appellees had some of the goods and did not return them upon request.    This cannot avail the appellant, for the reason that if, as the jury decided, there was a breach of the warranty, under the facts of this case, they were under no legal duty to return them.    *Seymour* v. *Phillips,* 61 Neb., 282; *Perry Mfg. Co.* v. *Tobin,* 106 Wis., 286; *Optenberg* v. *Skelton,* 109 Wis., 241.

Nor is their right of set-off or recoupment affected by the fact that they have sold the property.    *York Mfg. Co.* v. *Bonnell,* 24 Ind., 667; *Plant* v. *Condit,* 22 Ark., 454; *Woodruff* v. *Graddy,* 91 Ark., 333; *Storrs* v. *Emerson,* 72 Iowa, 390; *South Bend Pulley Co.* v. *W. E. Caldwell,* 54 S. W., 208; *Lane* v. *Lantz,* 27 Md., 211; *Hull* v. *Belknap,* 27 Mich., 179; *Parker* v. *Pringle,* 2 Strobh. L. (S. C.), 242.


CALHOON, J., delivered the opinion of the court. ·

Appellant's action against appellees is to recover some $2,600, less some $2,000 paid by appellees on account, for "lard" sold. The defense is that the purchase was of warranted "pure leaf lard" and the shipment was of "compound lard," the market value of which was fully covered by the payment.

The appellant made proof that it kept for sale only two kinds of lard—one "pure leaf," and the other "compound."    It fol-

lows that, if what was delivered was not "pure leaf," it must have been "compound." The evidence is overwhelming that it was not "pure leaf," and that it was, in fact, an inferior quality of "compound." This is shown by the witnesses Jones, Buford, Berry, Hardy, Murray, and Davis, and by Wertheimer, who was the regular sales agent of appellant at the time of the sale, though he did not officiate in that particular sale—that it was not pure leaf lard. There is no evidence to the contrary of this as to the lard received by appellees. But one witness—the shipping clerk of appellant—testified that he shipped to appellees "pure leaf lard." Jones testifies, without objection, that Wertheimer, the agent of appellant, inspected it and told him to sell it for "compound" lard, which he did; while Wertheimer's deposition, nowhere contradicted, shows that he was sent by the president of appellant company to appellees to "investigate and examine the lard and settle the matter and report to him in person, when I found the lard did not look to be first-class, pure lard." No one disputes Jones in saying that he did agree with the agent on the basis of "compound" lard, as per instruction to do so. The witness Wertheimer says also: "I was sent to Jackson, Miss., by the president of the German-American Provision Company for the purpose of arranging or compromising this dispute. On arrival, Mr. Jones showed me some of the lard, which I found did not look like first-class lard, and I informed the German-American Provision Company accordingly, and advised them to compromise the best way they could." If he was sent for the purpose of "arranging or compromising," he had the right to do so, as Jones says he did.

Of course, appellant had no right to require the return of the lard, even if that were possible in this case, without returning the money it had. It neither returned it nor offered to do so. Before rescission the *statu quo* must be restored or offered to be restored. Much of the lard was sold as "pure leaf" before

discovery of its nonconformance to warranty and reclamation made.

There was no error in refusing appellant's offer of the books of appellees "for the purpose of showing the actual loss or gain of Jones Brothers on the car load of lard here in controversy." If they got compound lard, or were authorized to sell it as such, on compromise adjustment, it is immaterial what they got for it.

*Affirmed.*